At February Term, 1815, of WAKE County Court the last will and testament of Nathaniel Jones was admitted to probate, and Edward Pride, who was named therein as executor, qualified as such.
The will contained these words, viz.:
"First, my will is that all my negroes, male and female, who have arrived to the age of 24 years, and their increase as fast as they shall arrive to the said age of 24 years, be emancipated or liberated, whenever the law or laws of said State will admit or tolerate it.
"And I do most solemnly enjoin it as an injunction on my executors hereinafter named, and all my representatives, not to sell, give, swap, or convey any of the negroes or their increase, in or out of the said State, as I may die seized or possessed of; and, further, my will is that until the said State shall pass a law or laws for tolerating emancipation or liberation, that all my negroes that I may die seized or possessed of may be divided among my wife and children, agreeably to the laws for the distribution of intestates' estates, and notice being had to what has already been given to my children, of which I have kept a just account, for which see a small memorandum book."
The conclusion of the paper was as follows, viz.:
"I suppose it will be asked my reasons for emancipating my negro slaves when the laws of the State will admit or tolerate it; which reasons are as follows, towit:
"Reason the first. Agreeably to the rights of man, every human being, be his or her color what it may, is entitled to freedom, when he, she, or they arrive to mature years.
"Reason the second. My conscience, the great criterion, condemns me for keeping them in slavery. *Page 23 
"Reason the third. The golden rule directs us to do unto every human creature as we would wish to be done unto; and sure I am that there is not one of us would agree to be kept in slavery during a long life.
"Reason the fourth, and last. I wish to die with a clear conscience, that I may not be ashamed to appear before my Master in a future world. These are the reasons for emancipating my slaves; and I wish every human creature seriously to deliberate on my reasons. And so farewell to this terrestrial world."
By a petition to the Superior Court of Wake, filed 11 January, 1823, the executor, setting forth therein the will, stated that among the slaves of the testator at the time he died was a black man named Allen, now of the age of 28 years, whose conduct from his childhood had always been sober, honest, industrious, and exemplary in every respect as (51) a faithful and trusty slave, and that his services had been meritorious and useful, and that accordingly he stood high in the favor and confidence of his late master; that by the intermarriage of the defendant with Amelia, one of the coheirs and legatees of the testator, the defendant became possessed of the said slave Allen, and detained him in slavery, claiming to be his owner and master; and that the defendant had sold or was about to sell said Allen to a dealer in slaves.
That the petitioner was ready to furnish satisfactory evidence of the good moral character and meritorious services of Allen; and that Allen was prepared to give such security as is required in cases of emancipation by our law; and the executor, therefore, prayed of the court that Allen might be emancipated and set free from bondage, pursuant to the will of his late master.
On hearing the petition, Donnell, J., was of opinion that a license could not be granted to emancipate upon the facts disclosed by the petition itself, and therefore ordered it to be dismissed; whereupon the petitioner appealed.
The testator, in the first clause of the will, directs (60) his slaves to be liberated whenever the laws of the State will admit or tolerate it; he then enjoins it upon his executors, and all his representatives, not to sell, give, swap, or convey any of the negroes or their increase in or out of the State; that until the State shall pass a law for tolerating emancipation his negroes shall be divided amongst his wife and children, agreeably to the laws for the distribution of intestates' estates. The will was proved at February Term, 1815. This petition was filed at May Term, 1823, eight years afterwards, and after the slave *Page 24 
for whose benefit it professes to be filed has been delivered over to the defendant in a course of distribution, as the testator in his will has directed.
The testator has not continued the trust in his executors to see the liberation of his slaves, at any indefinite period of time; when they were delivered over to his representatives by the assent of his executor, the trust would seem to cease in the latter and attach to the former. If that is the case, the executors filed this petition without any authority from the will. For this reason I can see no objection to the decree of the court below when they dismissed it, and I think that decree should be affirmed.
The rest of the Court concurred.
Affirmed. (61)